800 July 29, 2026 No. 713

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN SCOTT LONERGAN,
*Defendant-Appellant.*

Clackamas County Circuit Court
23CR36490; A183071

Susie L. Norby, Judge.

Submitted September 30, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant. John Lonergan filed the supplement brief *pro se*.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Elise Josephson, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment convicting him of several crimes, including identity theft, ORS 165.800(1). On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal (MJOA) on his identity theft charge. Specifically, defendant contends that the evidence was legally insufficient to support a conclusion that defendant constructively possessed the stolen identification, which was stowed alongside a host of other stolen items in a truck that was in defendant's possession.

When reviewing a denial of an MJOA, we "view[] the evidence in the light most favorable to the state to determine if the state presented sufficient evidence from which a rational trier of fact, making reasonable inferences, could find the essential elements of the crime beyond a reasonable doubt." *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019) (internal quotation marks omitted). Here, viewing the evidence in the light most favorable to the state, a reasonable factfinder could conclude that defendant constructively possessed the stolen identification. Accordingly, we affirm.

We recite the relevant facts in accordance with the *Hedgpeth* standard. During the summer, L visited an unoccupied rural property outside of Canby, which she had inherited from her deceased parents. The property encompassed a house and several outbuildings. That day, she noticed that her father's truck had been stolen from the property. She also observed that her late parents' house had been burgled; many of her family's possessions were missing, including tools, jewelry, and her mother's wallet, the latter of which had been stored in a bedroom dresser.

Later that summer, L again checked on the property. She called police after hearing other people near the back of the property. Officers arrived and came across defendant, who had emerged from behind a tall bushy tree. Behind the tree, parked outside of an outbuilding, was the stolen truck. The truck's ignition and steering column were destroyed, indicating that it had been unlawfully used. The outbuilding door was open and piles of debris were strewn on the ground outside.

The officers arrested defendant. While detained, defendant told the officers that he had been hired to tidy up

the property, including by sorting through any recyclable and salvageable items. He also stated that he had been to the property three days prior and that, on that day, he had driven there in the truck and had been there for a "couple hours." He indicated that he was in the process of purchasing the truck from the person he purported had hired him, who he had known for a week. Officers found a woman, codefendant, sitting on the truck's front passenger seat. Defendant claimed that codefendant was a "friend of [his]," who "said she could help" with the alleged job of cleaning up the property.

Officers turned their attention to the truck. The truck bed and interior were piled with property stolen from the house and outbuildings, including generators, tools, jewelry, and assorted knickknacks. The officers searched the truck, sifting through the numerous items and asking L if she recognized any of them. L identified many of the items as previously being stored in the house or outbuildings.

An officer folded the front passenger seat forward and began examining the small backseat of the truck cab. The backseat was disorganized, with many items haphazardly stacked atop one another, including clothing, toiletries, food, and trash. The officer dislodged a backpack lying around the center of the backseat, which revealed a smaller, opaque black bag tucked underneath. The black bag was closed but unzipped. Inside it, the officer found L's deceased mother's wallet, which was folded but unclasped. Inside the wallet was L's mother's personal identification card. L testified that the last time she saw the wallet, it was in the bedroom dresser in the house before the earlier burglary and that she did not put the wallet, nor any other piece of her family's property, in the truck.

Defendant was charged with several crimes, including identify theft. ORS 165.800(1). At the close of the state's case, defendant moved for a judgment of acquittal on the identity theft charge. He argued that the state had not met its evidentiary burden in establishing defendant's possession of the stolen identification to sustain a conviction because (1) there was no evidence of actual possession and (2) the evidence was insufficient to establish constructive possession because, even though the "wallet was in a bag

that was in the back of the truck" that defendant drove to the property, there was no "evidence regarding when that bag was put in the back of the truck *** [or] who put the bag in the back of the truck." The state responded that there was adequate evidence to establish possession because there was clear evidence that defendant was stealing items from the property and "using the truck as a storage unit, essentially, for stolen property, and it contain[ed] th[e] identification"; in short, defendant "[wa]s in possession of th[e] truck and all the stolen property within th[e] truck," including the identification. The trial court denied the motion. A jury convicted defendant of identity theft and other crimes.[1]

Defendant appeals from the judgment of conviction.

As relevant here, a person commits identify theft if they, "with the intent to deceive or to defraud, *** possess[] *** the personal identification of another person." ORS 165.800(1).[2] For purposes of identify theft, "possess" means to "have physical possession or otherwise to exercise dominion or control over property." ORS 161.015(9); *see also* ORS 161.035(2) (applying ORS 161.015(9)'s definition of "possess" to ORS 165.800(1)).

Possession can be actual or constructive. *State v. Haddon*, 286 Or App 191, 198, 399 P3d 458 (2017), *overruled on other grounds by State v. Serbin*, 324 Or App 792, 527 P3d 794 (2023). Because the state does not argue that there was evidence of actual possession on appeal, we analyze the sufficiency of proof as to only constructive possession. Constructive possession requires the state to prove that the "defendant knowingly exercised control over, or had the right to control, the contraband," *State v. Evans*, 161 Or App 86, 89, 983 P2d 1055 (1999), and it "may rely on circumstantial evidence and reasonable inferences flowing from that evidence" to do so, *State v. Hiner*, 269 Or App 447, 453, 345 P3d 478 (2015). However, mere evidence of a defendant's "presence in the proximity" of an item is insufficient to establish

---

[1] Defendant was also convicted of second-degree burglary, ORS 164.215, and unauthorized use of a vehicle, ORS 164.135.

[2] The full statutory provision reads, "A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person." ORS 165.800(1).

constructive possession. *State v. Fry*, 191 Or App 90, 93, 80 P3d 506 (2003).

The state takes the position that a rational factfinder could conclude that defendant constructively possessed the identification because he possessed the truck that the identification was found in, and because the evidence permitted an inference that defendant had previously stolen the wallet containing the identification from the property. We agree with the state's argument.

To start, defendant does not seriously dispute his possession of the truck, and we conclude that the evidence, viewed in the light most favorable to the state, would permit a rational trier of fact to reach that conclusion. Notably, defendant told officers that he was purchasing the truck and that he had driven the truck to the property on the day of his arrest. However, we observe that inferring defendant's constructive possession of the identification based only on his possession of the truck would require "too great an inferential leap" and "a stacking of inferences that is too speculative" to be reasonable. *Hiner*, 269 Or App at 453 (internal quotation marks omitted). As defendant argues, and the record demonstrates, the truck was filled with clothing, toiletries, food, and trash, as well as items stolen from the house and outbuildings. The identification was found in a wallet, which was itself in another bag, which was under a backpack, in the backseat of the truck. Given that evidence, defendant's possession of the truck, without more, was insufficient to permit a rational factfinder to conclude that he had the right to control the identification.

Therefore, even though we have sometimes concluded that a defendant's exercise of control over a larger container within which the contraband is housed permits a conclusion that the defendant constructively possessed that contraband, that principle does not apply here. *See State v. Bauer*, 128 Or App 598, 601, 876 P2d 802 (1994) (explaining that "evidence that the contraband is found in quarters owned or occupied by the defendant can be sufficient to allow the inference that [the] defendant has a right to control the contraband" (internal quotation marks omitted)). That is because that principle applies only "in cases in which the purported constructive

possessor not only owned or occupied the premises in which the contraband was found, but also *knew or*, from the contraband's location, *reasonably could have known, of its presence.*" State v. Stradley, 258 Or App 10, 15, 308 P3d 284 (2013) (emphases added); *see also State v. Keller*, 280 Or App 249, 255, 380 P3d 1144 (2016) (holding that the defendant's "presumed control of the car" did not "give rise to probable cause that he controlled everything within the vehicle"). That is, even where contraband is located within areas under a person's control, we have required evidence that suggests that the person was aware of the contraband, because constructive possession requires the defendant's knowledge of, in addition to the right to exercise control over, the contraband. *See Stradley*, 258 Or App at 16 (acknowledging the "'knowing' qualification of constructive possession"); *Keller*, 280 Or App at 254 (distinguishing between a defendant's awareness of contraband and his right to control it); *see also State v. Borden*, 307 Or App 526, 531, 476 P3d 979 (2020) (same). Here, the large number and variety of items present in utter disarray in the truck and the fact that the identification was nestled within multiple containers would not allow a rational trier of fact to determine that defendant's mere possession of the truck itself indicated his knowledge of all the items that were in the truck, including the identification.

However, defendant's possession of the truck was not the only evidence in the record linking him to the identification. Absent direct evidence, a defendant's awareness of and right to control an item may be reasonably inferred based on, among other things, evidence of their proximity to the item, the length of time that they were in proximity to the item, the location and visibility of the item, and the means by which the item arrived at its location. *See, e.g.*, *State v. Miller*, 238 Or 411, 414, 395 P2d 159 (1964) (holding that the "obviousness" of a firearm, which protruded from under the front seat of the car that the defendant was driving, and the "long time" that the defendant was operating the car were "particularly strong circumstantial evidence" supporting an inference that the defendant knew about the firearm); *State v. Kulick*, 314 Or App 680, 683-84, 497 P3d 789 (2021) (concluding that there was insufficient evidence to establish the defendant's constructive possession of a meth pipe found in

his girlfriend's car that he was driving, where the pipe was not located in a place visible to the defendant and there was neither evidence that he had placed the pipe in the car nor that he "regularly drove, rode in, or accessed the car").

Here, L testified that her mother's wallet, which contained the identification, had been stored in a bedroom dresser. She also testified that she discovered that the wallet was missing on the same day that she discovered that the truck and other valuables were stolen from the property, which was on some date previous to defendant's apprehension. It is reasonable to conclude that the person who stole the truck and other valuables from the house was the same person who stole the wallet containing the identification. Defendant admitted to having been at the property three days prior and that he had obtained the truck within the past week. The truck was full of stolen items taken from both the house and the outbuildings. When officers encountered defendant, he was in the process of sorting through items taken from the buildings on the property, even though L indicated that she had not hired defendant to do so. In combination, and viewed in the light most favorable to the state, that evidence would permit a rational factfinder to conclude that defendant was aware of and exercised control over the wallet because he took it from the dresser and put it in the truck.[3]

The most difficult part of the state's case is whether defendant's constructive possession of the wallet permitted

---

[3] We note that the evidence does not establish precisely when the earlier theft of the truck and wallet occurred relative to when defendant was arrested, when defendant claimed that he had been on the property prior, or when defendant indicated that he had come into possession of the truck. Thus, it is possible that defendant's prior visit to the property or appropriation of the truck occurred *after* the wallet was removed from the house. Nevertheless, when viewed in totality, the evidence allows for an inference that defendant stole both the truck and wallet in the earlier burglary incident, even if that inference does not "*necessarily* flow" from the evidence. *Hedgpeth*, 365 Or at 733 (emphasis in original).

Further, defendant argues that because the wallet's presence in the truck was just as "readily attributable" to codefendant's actions, it was unreasonable to infer that defendant constructively possessed the wallet. But although the evidence permitted a rational factfinder to conclude that codefendant was helping defendant steal valuables from the property and stow them in the truck on the day that police arrived, there is no evidence in the record linking codefendant to any previous visits to the property, which was when L testified that the wallet was stolen. Indeed, although codefendant shared burglary, criminal trespass, and unauthorized use of a vehicle charges with defendant, only defendant was charged with—and eventually convicted of—identity theft.

a rational trier of fact to conclude that defendant constructively possessed the identification that was inside the wallet. That is the more difficult question because the state had to establish that defendant knew of the identification's presence in the wallet. There was no direct evidence that defendant knew about the identification, and the wallet itself did not announce the presence of the identification. Ultimately, however, we conclude that a rational factfinder could infer that defendant knew that the identification was contained in the wallet. The wallet itself is usually not the valuable item; instead, it is what a wallet contains that makes stealing it worthwhile. Thus, it is a reasonable inference that a person stealing a wallet would open it to determine what was inside, and it is reasonable to conclude that defendant did so here. In fact, the wallet, when found by the officers, was unclasped. *Cf. State v. Daniels*, 348 Or 513, 521-22, 234 P3d 976 (2010) (concluding that insufficient evidence supported an inference that the defendant knew about drugs where the drugs were located inside his girlfriend's bag, and there was neither evidence that the bag announced its illicit contents, nor that the defendant had looked in the bag).

In sum, because the record, when viewed in the light most favorable to the state, gave rise to reasonable inferences that defendant possessed the truck containing the identification and that defendant himself stole the identification, a rational factfinder could conclude that defendant constructively possessed the identification. Therefore, we conclude that the trial court did not err in denying defendant's MJOA on the identity theft charge.[4]

Affirmed.

---

[4] We do not address defendant's three *pro se* assignments of error, because they are unpreserved. ORAP 5.45(1); *see also State v. Pedersen*, 338 Or App 362, 367, 566 P3d 24, *rev den*, 374 Or 188 (2025) ("As a general rule, *pro se* litigants are bound by the same preservation rules as all other parties." (Internal quotation marks omitted.)). Defendant does not request plain error review, and absent a direct request we generally do not engage in plain error review. ORAP 5.45(7); *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015). Further, we observe that defendant's third assignment of error, which amounts to a claim that his trial attorney provided inadequate assistance of counsel, is generally inappropriate for resolution on direct appeal. *State v. Hutchinson*, 337 Or App 426, 435 n 4, 563 P3d 986, *rev den*, 373 Or 738 (2025); *Davis v. Armenakis*, 151 Or App 66, 68 n 1, 948 P2d 327 (1997), *rev den*, 327 Or 83, 328 Or 194 (1998).